Colin K. McCarthy, Esq. (Bar No. 215059)
ckmccarthy@lanak-hanna.com
Member of
LANAK & HANNA, P.C.
625 The City Drive South, Suite 190
Orange, CA 92868
Telephone:   (714) 550-0418
Facsimile:    (714) 703-1610

Attorneys for Plaintiff
United States of America for the Use and Benefit of
Boscacci, Inc. dba Amp Electric

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF BOSCACCI, INC. dba AMP ELECTRIC, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED TECHNOLOGY CONSTRUCTION, a Washington corporation; ZURICH AMERICAN INSURANCE COMPANY, a New York corporation;<br><br>Defendants. | CASE NO.:<br><br>**PLAINTIFF UNITED STATES FOR THE USE AND BENEFIT OF BOSCACCI, INC. DBA AMP ELECTRIC'S COMPLAINT FOR:**<br><br>**1.   BREACH OF CONTRACT**<br>**2.   QUANTUM MERUIT**<br>**3.   RECOVERY ON MILLER ACT PAYMENT BOND**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff UNITED STATES FOR THE USE AND BENEFIT OF BOSCACCI, INC. dba AMP ELECTRIC, a California corporation alleges as follows:

## JURISDICTION

1.     Jurisdiction in this matter is conferred under 40 U.S.C. §3133 (Miller Act).

## PARTIES AND VENUE

2.     At all times herein mentioned, Plaintiff UNITED STATES FOR THE USE AND BENEFIT OF BOSCACCI, INC. dba AMP ELECTRIC (hereinafter "AMP

ELECTRIC" or "Plaintiff"), was and is a California corporation, and licensed California contractor.

3.    Plaintiff is informed and believes and thereon alleges that the activities complained of and/or obligations sued upon herein, arose within this judicial district pursuant to contract and that Defendants are obligated under that contract.

4.    Plaintiff is informed and believes and thereon alleges that Defendant ADVANCED TECHNOLOGY CONSTRUCTION, ("ATC") is and at all times herein mentioned was, a corporation organized and existing under the laws of the State of Washington, with its principal place of business in the City of Tacoma, Washington, but doing business in and authorized to do business in the State of California.  Plaintiff is informed believes and thereon alleges that Defendant ATC was at all times mentioned herein, a licensed general contractor.

5.    Plaintiff is informed and believes and thereon alleges that Defendant ZURICH AMERICAN INSURANCE COMPANY ("ZURICH") is and at all times herein mentioned was, a corporation organized and existing under the laws of the State of New York, with its principal place of business in the State of Connecticut, but doing business in and authorized to do business in the State of California.

6.    At all times herein mentioned, each of the Defendants was the agent and employee of each of their co-Defendants, and in doing the things herein mentioned, were acting in the scope of their authority as such agents and employees, and with the permission and consent of their co- Defendants and each them claim some interest in the property which is the subject of this action.

7.    The allegations set forth in this Complaint relate to work performed by AMP ELECTRIC for ATC on a project known as VA Remodel Mental Health located at 150 Muir Road, Martinez, CA 94553 for the United States as owner ("Project".)  Therefore, venue is proper in this judicial district.

///

///

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Breach of Written Contract: Against ATC)

8.     Plaintiff AMP ELECTRIC incorporates herein by reference as though fully set forth herein, its allegations contained in paragraphs 1 through 7.

9.     Plaintiff AMP ELECTRIC entered into a written subcontract agreement with Defendant ATC, dated September 22, 2015, whereby AMP ELECTRIC was to provide electrical work, communications, and electronic safety and security systems for the Project in exchange for payment ("Subcontract").  A true and correct copy of the Subcontract is attached hereto as **Exhibit 1**.  The Subcontract is supported by adequate consideration, including AMP ELECTRIC's performance of work in exchange for payment on the Project.

10.     During AMP ELECTRIC's performance of the Subcontract, ATC requested, in writing, that AMP ELECTRIC provide additional work which was outside of AMP ELECTRIC's original Subcontract.  AMP ELECTRIC performed this additional work at the specific instance and request of ATC, yet ATC has failed and refused to pay AMP ELECTRIC for the additional work, despite repeated demands.  To date, a significant portion of change order work remains outstanding.

11.     In addition, the Subcontract specifies that ATC will pay AMP ELECTRIC on a monthly basis for AMP ELECTRIC's work.  Despite this contractual requirement, ATC has refused and failed to pay AMP ELECTRIC in a timely fashion.  In fact, ATC has not paid AMP ELECTRIC despite it completing its scope of work in May 2018, all in direct breach of the terms of the Subcontract. ATC's delay in making progress payments to AMP ELECTRIC has caused AMP ELECTRIC to incur delay damages. Moreover, as a result of ATC's delays, AMP ELECTRIC has incurred additional costs on the Project. There is no good faith dispute as to AMP ELECTRIC's performance of the original Subcontract work and ATC is withholding undisputed Subcontract amounts above and beyond any withholds, credits or back charges.

12.     Defendant ATC have breached the Subcontract by, among other things, failing to pay AMP ELECTRIC for progress work, change orders and costs related to the delays ATC has caused AMP ELECTRIC.  AMP ELECTRIC has performed all of its obligations under the Subcontract, including performance of the electrical work, communications, and electronic safety and security systems, except those obligations which it has been legally excused from performing based on Defendant ATC's prior breach.

13.     As a direct result of Defendant ATC's breach, AMP ELECTRIC has been damaged in an amount according to proof, plus delay damages, contractual attorneys' fees, and costs, in an amount according to proof at trial with interest at the legal rate..

## SECOND CLAIM FOR RELIEF
### (Quantum Meruit: Against ATC)

14.     Plaintiff AMP ELECTRIC incorporates herein by reference as though fully set forth herein, its allegations contained in paragraphs 1 through 13.

15.     Within the last four years, Defendant ATC became indebted to Plaintiff AMP ELECTRIC in an agreed principal sum to be determined at the time of trial, for work, labor and materials performed for the benefit of Defendant ATC by Plaintiff and Defendant ATC then and there agreed to pay the amount.

16.     Neither the whole nor any part of the above sum has been paid, and although demand therefore has been made, there is now due, owing and unpaid from Defendant ATC to Plaintiff AMP ELECTRIC an amount to conform to proof at trial together with interest at the legal rate.

## THIRD CLAIM FOR RELIEF
### (Recovery on Miller Act Payment Bond: Against ATC, ZURICH)

17.     Plaintiff AMP ELECTRIC incorporates herein by reference as though fully set forth herein, its allegations contained in paragraphs 1 through 16.

///

///

18.     Defendant ZURICH issued a Payment Bond, pursuant to the Miller Act, on behalf of Defendant ATC ("Payment Bond.").  The Payment Bond lists the United States as obligee and Defendant ATC as principal.  The Payment Bond guarantees Plaintiff AMP ELECTRIC's payment under the Subcontract on the Project.

19.     Plaintiff AMP ELECTRIC is within the class of persons entitled to make a claim on the Miller Act Payment Bond as it provided labor and material to the Project under a direct contract with Defendant ATC within the past one year and has waited the requisite 90 days from its delinquent payments to assert this claim.  Plaintiff AMP ELECTRIC has complied with all other requirements requisite to asserting a Payment Bond claim.

20.     AMP ELECTRIC is entitled to payment from Defendant ZURICH pursuant to the Miller Act, 40 U.S.C. Section 3133.  AMP ELECTRIC is also entitled to recovery attorney's fees (pursuant to the Subcontract), in addition to legal costs and prejudgment interest against Defendant ZURICH under law.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff UNITED STATES FOR THE USE AND BENEFIT OF BOSCACCI, INC. dba AMP ELECTRIC prays as follows:

ON THE FIRST CLAIM FOR RELIEF:

1.     For damages, according to proof, from Defendant ADVANCED TECHNOLOGY CONSTRUCTION, plus contractual attorney's fees and pre-judgment interest;

ON THE SECOND CLAIM FOR RELIEF:

2.     For damages, according to proof, from Defendants ADVANCED TECHNOLOGY CONSTRUCTION, plus pre-judgment interest;

ON THE THIRD CLAIM FOR RELIEF:

3.     For damages, according to proof, from Defendants ZURICH AMERICAN INSURANCE COMPANY, plus attorney's fees and pre-judgment interest;

4.     For costs of suit herein incurred;

5.      For such other and further relief as the Court may deem proper.

DATED:  January 15, 2019                    Respectfully submitted,
                                            LANAK & HANNA, P.C.


By:     _____
        COLIN K. MCCARTHY
        Attorneys For Plaintiff
        UNITED STATES FOR THE USE
        AND BENEFIT OF BOSCACCI, INC.
        dba AMP ELECTRIC


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

DATED:  January 15, 2019                    Respectfully submitted,

                                            LANAK & HANNA, P.C.


By:     _____
        COLIN K. MCCARTHY
        Attorneys For Plaintiff
        UNITED STATES FOR THE USE
        AND BENEFIT OF BOSCACCI, INC.
        dba AMP ELECTRIC

**EXHIBIT "A"**



**ADVANCED TECHNOLOGY CONSTRUCTION CORP.**
**3828 E. Portland Avenue**
**Tacoma, WA 98404**

# SUBCONTRACT AGREEMENT

**SUBCONTRACT NUMBER      6985**

**AGREEMENT** made as of September 22nd of 2015

**BETWEEN** the Contractor:           Advanced Technology Construction
3828 E. Portland Avenue
Tacoma, WA 98404
Phone: 253.203.7020  Fax: 253.473.1008
Contact:  Wayne Gilthvedt
Contractor License #ADVANTC990BZ

and the Subcontractor:                    AMP Electric
1735 E Bayshore Rd
Redwood City, CA  94063
Phone: 650.716.4881  Fax: 650.618.5770
Contact: Nicholas Boscacci
Contractor License # C10:915178

Advanced Technology Construction Corp.**,** hereinafter referred to as "Contractor" and AMP Electric hereinafter referred to as "Subcontractor," is to perform part of the Work on the following Project pursuant to the "Prime Contract" between Contractor and Owner. The Contractor has made a contract for construction dated 08.06.15.

For the following Project:           **VA Remodel Mental Health, Martinez CA**
***15-0821***

With the Owner:                      Department of Veterans Affairs
4150 Clement Street
San Francisco, CA 94121

Said Contract is hereinafter referred to as the Prime Contract and which provides for the furnishing of labor, materials, equipment and services in connection with the construction of the Project.  A copy of the Prime Contract, consisting of the Agreement between Owner and the Contractor will be provided upon request.

THEREFORE, it is hereby agreed as follows:
1.      Subcontractor agrees to furnish all supervision, management, services, labor, tools, equipment, materials, supplies, engineering, testing and/or any other act or thing required to diligently and fully perform and complete the work described in strict accordance with the applicable, state, federal and local laws and regulations and the following Contract Provisions and the Prime Contract hereby made a part of this Subcontract by reference.

(a)     The work to be performed is as follows:
            **Exhibit "A"** attached hereto.

(b)     The Contract documents include all documents referenced in Section 1 of the following Contract Provisions.

2.     Should any question arise with respect to the interpretation of the drawings and specifications, such questions shall be submitted to Owner and/or the representative of Owner authorized to interpret the drawings and specifications, and its decision shall be final and binding.   Subcontractor shall submit to Contractor any such question within five (5) working days after such question arises or, if the Prime Contract provides for a shorter period, within sufficient time to permit Contractor to give the specified notice to Owner. If Owner and/or Owner's representative refuses or fails to make a decision, Contractor's decision shall be binding upon the Subcontractor.

3.     All work subject to this Subcontract shall be performed to the complete satisfaction of Contractor, Owner, and/or the representative of Owner authorized to interpret and judge the performance of the Prime Contract.

4.     Contractor agrees to pay Subcontractor for the full, timely and satisfactory performance and completion of this Subcontract, as specified herein, the sum of **Six Hundred Twenty Seven Thousand Dollars and Zero Cents** (**$627,000.00**), as well as additions outlined in **Exhibit "B" Description of Unit Price**, attached hereto.

## SECTION 1.  CONTRACT DOCUMENTS:

The contract documents consist of this Subcontract and the Prime Contract documents which, by this reference, are incorporated herein and made a part of this Subcontract.  The "Prime Contract" refers to the general and special conditions, drawings, specifications, addenda, amendments, change orders, modifications, and all other documents forming a part of or incorporated by reference in the contract between Contractor and Owner. Subcontractor represents that it has carefully examined all of the documents comprising the Prime Contract and is familiar with the terms and conditions thereof.

## SECTION 2.  SCOPE OF WORK:

A.     The items of work listed in this Subcontract, including Attachment A, are for the purpose of clarifying their inclusion in this work.  If this listing is by Prime Contract division or section, Subcontractor's work shall include all items of work listed therein plus any items normally performed by such Subcontractor in association with its work, including such items which may be specified in other parts of the plans, drawings and technical specifications.  Unless specifically provided for herein, Subcontractor shall also be responsible for any items which may be included in the specifications but excluded by Subcontractor from his bid, and any items included in Subcontractor's bid but not included in the designated specification sections above.

B.     Subcontractor represents that it has made all investigations essential to a full understanding of the difficulties which it may encounter in performing the work.  Except to the extent relief is provided in Section 8 of this Subcontract, Subcontractor will complete the work for the compensation stated in this Subcontract and assume complete responsibility for the conditions (including subsurface) existing at the site and its surroundings.  Subcontractor's obligation hereunder shall include but not be limited to the location of all utilities that may affect or interfere with Subcontractor's work.  Subcontractor shall obtain all utility locates for all areas of its work and shall fully protect and maintain in operation all utilities at all times.

C.      It is understood and agreed that if the work is performed and paid for on a unit price basis, quantities shown above or referenced in the Prime Contract are quantities estimated to be required under the Subcontract and are not binding on Contractor, and that the actual quantities shall be in such amounts as may eventually be required and determined under the Prime Contract. The estimated quantities under this Subcontract are subject to the same conditions of increase and decrease as the estimated quantities under the Prime Contract.

D.      Unless otherwise provided by addendum to this Subcontract, Subcontractor shall be responsible for all materials delivered to him whether delivered F.O.B. point of origin or F.O.B. job-site and shall pay all demurrage and storage charges which accrue after delivery. Any material lost or damaged after delivery from any cause whatsoever shall be replaced by or at the expense of Subcontractor.

E.      Subcontractor agrees not to assign or sublet this Subcontract, or any part thereof, including any part of the work or claims hereunder, without the written consent of Contractor. Subcontractor shall designate in writing to Contractor all lower tier subcontractors and suppliers and shall not change such lower tier subcontractors and suppliers without approval. Subcontractor agrees that if any portion of the work covered by this Subcontract is further subcontracted, then such subcontractors shall be required to be bound by and observe the provisions of this Subcontract to the same extent as herein required by Subcontractor, and that a copy of this clause imposing such obligations upon the sub-subcontractor shall be included in any further subcontract.

## SECTION 3. PAYMENT:

A.      Partial payments will be made to Subcontractor on a monthly basis for the portion of the work performed in the preceding month in accordance with monthly estimates prepared by Subcontractor Contractor and as approved by Contractor and Owner. Subcontractor must submit monthly estimates by 20th. Said monthly payments are conditioned on and subject to (as an express condition precedent) receipt of payment by Contractor from Owner covering the corresponding monthly estimate of Contractor, including the approved portion of Subcontractor's monthly estimate. Subcontractor specifically waives any claims against Contractor for failure or delays in payment by Owner. Payment to Subcontractor pursuant to monthly estimates shall not constitute or imply acceptance by Contractor or Owner of any portion of Subcontractor's work. Subcontractor agrees to complete and supply Contractor's monthly lien or claim release and affidavit forms prior to payment. If certified payrolls are required, it is a condition precedent to payment that Subcontractor provide Contractor with copies of certified payrolls for the payment period.

B.      An amount equal to 0% of Subcontractor's approved monthly estimates shall be retained by Contractor, which retainage shall not be released until all of the following express conditions precedent have occurred: (a) Contractor receives final project payment from Owner; (b) Owner accepts Subcontractor's work and applicable guarantees; (c) Subcontractor furnishes Contractor with satisfactory evidence that all obligations incurred by Subcontractor pursuant to this Subcontract which may be the basis for a lien against the premises, retainage, or payment bond have been paid in full; (d) Subcontractor provides a full and complete waiver and release of any and all claims relating to the project; (e) Subcontractor completes all as-builts and provides all operations and maintenance manuals required by this Subcontract to the satisfaction of Owner; and (f) Subcontractor furnishes Contractor with all certified payrolls required by the Subcontract. Acceptance of final payment by Subcontractor shall operate independently as a full and complete waiver and release by Subcontractor of any and all claims or liens against the project, Contractor, Owner, any retainage or bonds.

C.      If the work is not to be performed on a unit price basis, then prior to the first application for payment, Subcontractor shall furnish to Contractor, at Contractor's request, a schedule of values for the various portions of work, including quantities, aggregating the total portion of work covered by this Subcontract. Such schedule of values, when approved by Contractor, shall be used as the basis for Subcontractor's payment.

D.      Subcontractor may be paid for materials, not incorporated in the work, but delivered and suitably stored at the site, or at some other agreed location, only to the extent Contractor receives payment from Owner pursuant to the Prime Contract, and in no event in an amount greater than supplier invoice cost and only upon receipt of a supplier release on a form acceptable to Contractor in order to receive payment for stored materials, Subcontractor must attach the material invoice to its monthly payment estimate.

E.      Payments otherwise due Subcontractor may be withheld by Contractor on account of defective work not remedied, any breach by Subcontractor of any provision or obligation of this Subcontract, failure of Subcontractor to timely submit reports and/or submittals, failure of Subcontractor to make payments for labor, supplies, equipment or other materials or the reasonable apprehension by Contractor of claims by third parties or Owner arising from the Subcontract work, a reasonable doubt by Contractor that Subcontractor can timely complete the work of this Subcontract or complete the work of this Subcontract for the balance then unpaid. Contractor shall have the right to offset payments otherwise due Subcontractor until Subcontractor satisfies amounts owed or claimed due from Subcontractor by any third persons. In the event it appears Subcontractor is unable to currently pay bills incurred in the performance of its work, Contractor may take such steps as it deems necessary, including direct payment or issuing joint checks, to insure that amounts paid will be utilized to discharge such bills.

F.      Subcontractor will keep any and all project retainage and bonds and the improvements referred to in this Subcontract and the real property upon which they are situated free from all claims or mechanic's and materialmen's liens by reason of his work. If Subcontractor fails to remove any lien or adjust any claim relating to its work, by bonding or otherwise, Contractor may retain sufficient funds out of any money due or thereafter to become due to Subcontractor to pay the same and all costs incurred by reason thereof and Contractor may, without recourse by Subcontractor, pay said lien or claim and costs out of any funds at any time in the hands of Contractor owing to Subcontractor. Contractor may also obtain a release bond and offset payments otherwise due Subcontractor for the cost of such bond. Contractor may, in its sole discretion, issue a joint check to Subcontractor and said claimant. Subcontractor shall defend, indemnify and hold harmless Contractor and Owner from the operation and effect of any claim, lien or encumbrance.

G.      At Contractor's option and request, Subcontractor's application for payment shall be accompanied by labor, material, and/or equipment releases, properly executed by all labor, sub-subcontractors, suppliers, and others who may have lien or claim rights against the project or any bond. Such releases will be in a form satisfactory to Contractor. Subcontractor shall also furnish upon request and as a condition to payment satisfactory evidence of payment made for debts incurred in the performance of the work.

### SECTION 4. LABOR AND WAGES:

A.      Subcontractor is obligated to inquire of Contractor and shall comply with and be bound by any labor agreements executed by Contractor or on Contractor's behalf applicable to work covered by this Subcontract. Failure at any time to comply with any of the provisions of such agreements will, at the option of Contractor, be cause for immediate termination of this Subcontract for default and Contractor shall have the rights contained in Section 13.C with regard to such termination. In the event of a strike or other labor dispute affecting the labor employed by Subcontractor, Contractor may, at its option, terminate this Subcontract, but shall compensate Subcontractor only for the value of labor and material furnished, proportioned upon the contract price, the amount of which shall be subject to the provisions of the "disputes clause" of this Subcontract. In no event shall Subcontractor be entitled to prospective profits on unperformed work.

B.      This Subcontract may be subject to prevailing and/or minimum wage requirements. Subcontractor shall not pay any worker less than the prevailing and/or minimum hourly wage rates and fringe benefits required by the Prime Contract and/or law.

C.     ATC is an Equal Opportunity and Affirmative Action Employer and complies with Executive Order 11246 as amended, Section 503 of the Rehabilitation act of 1973 and the Vietnam Readjustment Assistance Act of 1974.  Subcontractor is required to comply and submit to Contractor the following for itself and for each agent of Subcontractor that performs work on the project:  all Equal Employment Opportunity (EEO) reports, certified payrolls, safety, and all other submittals, reports, notices and statements required by the Prime Contract on a weekly basis prior to release of Subcontractor.

## SECTION 5.  BONDING:

☒   Subcontractor shall furnish performance and payment bonds.

☐   Subcontractor shall not furnish performance and payment bonds.

If required, Subcontractor shall furnish a performance bond and a labor and material payment bond in an amount equal to the full Subcontract price.  Such bond shall be on a form furnished by and with a surety satisfactory to Contractor.  Premiums for such bonds shall be paid by Subcontractor unless otherwise agreed in writing.

## SECTION 6.  PROSECUTION OF THE WORK AND SCHEDULING:

A.     TIME IS OF THE ESSENCE FOR THIS SUBCONTRACT.  Subcontractor therefore agrees to complete the work as specifically required.  Subcontractor shall commence and diligently prosecute the work in such order as may be directed by Contractor's schedule and any revisions or changes thereto.  If Subcontractor fails to comply with Contractor's direction to commence work within 48 hours after receipt of such direction, Contractor may utilize another contractor or perform the Subcontract work itself and back charge Subcontractor for all costs (including overhead and profit) incident to performing such work.  Subcontractor shall prosecute the work with an adequate work force to maintain the schedule prepared by Contractor.  Any overtime costs incurred by Subcontractor to meet its schedule commitment to Contractor are the responsibility of Subcontractor.  All materials that are to be furnished by Subcontractor shall be furnished and installed in sufficient time to enable Subcontractor to perform and complete his work within the time or times provided by Contractor's schedule.

B.     Subcontractor shall provide Contractor with scheduling information and Subcontractor's proposed schedule for Subcontractor's work upon Contractor's request, including without limitation Subcontractor's schedule for submittals, materials delivery and as-builts.  Contractor may then prepare a schedule of the work and, as may be necessary, revise such schedule as the work progresses.  Subcontractor acknowledges that revisions may be made in such schedule and agrees to make no claim for acceleration or delay by reason of such revisions so long as such revisions are of the type normally experienced in work of this scope and complexity.

C.     Subcontractor shall fully cooperate with Contractor and others engaged in the work on the project, and shall not interfere with the performance of such work; and Subcontractor shall coordinate its work with the work of Contractor, other subcontractors, Owner and its agents or inspectors, and utility companies or others that may be working in the area, so that the work of the entire project may be performed with the utmost speed consistent with good practice.  In the case of conflict or other reasons for coordination, Contractor may direct the necessary coordination or the performance of certain work, and Subcontractor will execute its portion of such work, even at increased expense to Subcontractor and not at Contractor's expense.

D     Subcontractor agrees to reimburse and indemnify Contractor for any and all liquidated or actual damages that may be assessed against and/or incurred by Contractor which are attributable to or caused in whole or in part by Subcontractor's failure to perform the work required by this Subcontract within the time

fixed or in the manner provided for herein. Reimbursement of liquidated damages assessed against and/or incurred by the Contractor is not the exclusive remedy of Contractor against Subcontractor for delay by Subcontractor.

E.      If Subcontractor's alleged acts or omissions result in a fine or penalty against Contractor by any regulatory agency, then the amount so levied shall be for Subcontractor's account and may be deducted from the amount otherwise due Subcontractor.

## SECTION 7. OBLIGATIONS AND RESPONSIBILITIES:

A.      It is agreed that Subcontractor assumes toward Contractor all obligations and responsibilities which Contractor has assumed toward Owner under the Prime Contract, and shall be entitled to all privileges and protections granted Contractor by Owner, under the Prime Contract. In case of conflict between the terms of this Subcontract and the Prime Contract, this Subcontract shall control.

B.      Subcontractor shall, at its own cost and expense, pay all fees related to the execution of its work; apply for and obtain all necessary permits, licenses, and any other documents necessary to perform the work; and shall conform strictly to the laws, building codes, and ordinances in force insofar as applicable to the work covered by this Subcontract. Subcontractor is an independent contractor in fact and also within the scope of the United States Internal Revenue Code, Federal Social Security Regulations, and any and all unemployment insurance laws and applicable collective bargaining agreements and is, therefore, solely responsible for all payroll taxes, trust fund contributions, and other deductions and withholdings and contributions under such laws and agreements. The compensation payable to Subcontractor, as provided above, includes all sales and use taxes, franchise, excise, and other taxes and governmental impositions of all kinds and is not subject to any addition for any such taxes or impositions now or hereafter levied.

C.      Subcontractor shall take all reasonable safety precautions pertaining to its work and the conduct thereof, including, but not limited to, compliance with all applicable laws, ordinances, rules, regulations and orders issued by a public authority, whether federal, state, local or otherwise, the Federal Occupational Safety and Health Act, and, in addition, any safety measures called for by Contractor. Contractor will provide Subcontractor with a copy of Contractor's safety program manual upon written request. Subcontractor shall attend all safety meetings (weekly or otherwise) called by Contractor and conduct hazard communication training, as well as any other training programs required by Contractor. Upon request, Subcontractor must provide evidence that its employees have taken all training programs required by Contractor. Any employee who fails to take the training or fails to observe the safety precautions shall be removed from the jobsite upon request by Contractor.

D.      Subcontractor shall have a competent supervisor accepted by Contractor prior to Subcontractor mobilization and on the project at all times Subcontractor's work is or should be performed. Subcontractor's supervisor shall have the ability and authority to make all decisions and issue all directions in the field in order to properly, safely and timely perform the work and coordinate the work with Contractor. Subcontractor shall notify Contractor in advance of any change of its supervisor.

E.      Subcontractor specifically agrees that it is responsible for the protection of its work until final completion and acceptance thereof by Owner and it will make good or replace, at no expense to Contractor or Owner, any damage to its work or property by others which occurs prior to said final acceptance.

F.      All shop drawings, drawings and samples of Subcontractor shall be promptly submitted for approval of Owner or its representative through Contractor and all other communications between Subcontractor and Owner with respect to this Subcontract shall be through Contractor. Subcontractor shall, in a timely manner, submit approval request data for all materials prior to beginning work, and shall provide material certifications and

receipts as required prior to receipt of final payment. Approval of submittals by the Owner shall have the effect specified in the Prime Contract. Any work performed by Subcontractor without approved submittals is at Subcontractor's risk and responsibility.

G.      If the Prime Contract contains any provision which prohibits discrimination on the basis of race, color, religion, sex, or national origin, etc., or requires affirmative action to ensure equal employment opportunity, or if any law, regulation or order has any application to the Prime Contract, then Subcontractor hereby agrees to comply with such provision, law, regulation, or order. The foregoing provision includes, but is not limited to the following: employment, recruiting, termination, compensation, and training. In the event that any such provision, law, regulation, or order requires a physical attachment of specific wording to this Subcontractor, then such attachment shall be furnished by Contractor and shall be considered a part of this Subcontract by reference thereto or shall be physically attached thereto as called for by Contractor.

H.      Subcontractor shall keep the project work area reasonably clean of debris resulting from the performance of Subcontractor's work. If Subcontractor fails to comply with this paragraph within 24 hours after receipt of notice of noncompliance from Contractor, Contractor may perform such necessary clean-up and deduct the cost from any amounts due Subcontractor.

I.      Whenever it may be useful or necessary for Contractor to do so Contractor or Owner shall be permitted to occupy and/or use any portion of the work which has been either partially or fully completed by Subcontractor before final inspection and acceptance thereof by Owner, but such use and/or occupation shall not relieve Subcontractor of his guarantee of said work nor of his obligation to make good at his own expense any defect in materials and/or workmanship which may occur or develop prior to Contractor 's release from responsibility to Owner.

J.      If Subcontractor represents itself prior or post bid as having a certain classification (woman owned business enterprise, disadvantaged business enterprise, etc.), and such representation is alleged to be false, then Subcontractor agrees to indemnify, defend and hold harmless Contractor from any fines and penalties imposed or sought to be imposed by the Owner or any regulatory agency or any protests or claims filed by any third party as a consequence of such alleged false representation. Subcontractor further agrees to reimburse Contractor for any damages Contractor incurs as a consequence of Subcontractor's false representation.

K.      If a Subcontractor or its lower tier subcontractors are issued security badges under a contact for Advanced Technology Construction, the Subcontractor is responsible to confiscate badges of any terminated employees, or subtiers's and return them to ATC. In addition, it is required that you immediately notify us via email of the employees' termination followed by written notice within 48 hours. Email notification should be directed to lindsey@atcbuilder.com.

L.      Advanced Technology Construction is not responsible for any costs associated with badging and/or security clearances on the jobsite. All time associated with the obtaining of badging or security clearances is the sole responsibility of the Subcontractor and any and all costs are included in this contract.

## SECTION 8.  CHANGES, EXTRA WORK, AND CHANGED CONDITIONS:

A.      Contractor may at any time by written order of Contractor's authorized representative, and without notice to Subcontractor's sureties, make changes in, additions to, and deletions from the work to be performed under this Subcontract, and Subcontractor shall promptly proceed with the performance of this Subcontract as so changed. Contractor and Subcontractor shall attempt in good faith to reach agreement in writing as to any increase or decrease of the Subcontract price or time resulting from such change or extra work and, if agreement is not possible, then the amount of additional time or change in compensation shall be determined as provided in the Disputes Clause of this Subcontract; provided, however, that no payment shall be due Subcontractor

because of changed, extra, or additional work arising out of Owner acts or omissions unless and until Contractor has received such payment from Owner for said work performed by Subcontractor. Any limitations on payment for changed or extra work contained in the Prime Contract shall apply to Subcontractor. When ordered by Contractor, in writing, Subcontractor agrees to proceed with the work as changed so as not to delay the progress of the work pending determination of the value thereof. Subcontractor agrees to submit cost estimates on change order proposals in complete and full analytical detail as required or requested. Any Subcontractor claim for adjustment of the Subcontract price or for an extension of time of performance under this Section must be made in writing within three (3) working days from the date such changed, extra or additional work is ordered or, if the Prime Contract provides for a shorter period, within sufficient time to permit Contractor to give the specified Notice to Owner. Failure to give timely notice of claim shall constitute a waiver of the Subcontractor claim. No Subcontractor claim for additional compensation or time whether on account of extra labor and/or materials furnished or otherwise, shall be paid unless the same is furnished pursuant to a written order signed by Contractor's project manager or project superintendent and issued prior to the furnishing of the same. Subcontractor expressly agrees that this requirement cannot be waived.

B.      In the event that Subcontractor encounters a changed condition, Subcontractor shall immediately notify Contractor in writing of such changed condition. Subcontractor may then request an extension of time for the performance of its work as a consequence of such changed condition, but only upon the same terms and conditions and only to the extent actually allowed to Contractor by Owner, and Subcontractor shall not be entitled to any increase in its Subcontract price or to damages or additional compensation as a consequence of such changed condition, except to the extent that the Prime Contract entitles Contractor to compensation for such changed condition, and then only to the extent of any amounts that Contractor may, on behalf of Subcontractor, recover from Owner for such changed condition. No allowance for an extension of time or additional compensation shall be claimed by Subcontractor unless Subcontractor shall have timely notified Contractor of the changed condition, and made written request for such allowance within three (3) working days after such changed condition was encountered or, if the Prime Contract provides for a shorter period, within sufficient time to permit Contractor to give the specified notice to Owner.

## SECTION 9. DISPUTES:

A.      As to any claims asserted by Subcontractor for or on account of acts or omissions of Owner or its representatives or any claims made by Owner for which Subcontractor may be responsible, which claims are not disposed of by agreement, Subcontractor agrees to prosecute or defend such claims in Contractor's name, in accordance with the provisions in the Prime Contract for determining disputes. Contractor shall have the option to present such claims upon Subcontractor's behalf, in advance of and even without Subcontractor's written request. Contractor and Subcontractor further agree to cooperate in prosecuting or defending claims. Subcontractor shall have full responsibility for preparation and presentation of such claims and shall bear the expenses thereof, including attorneys' fees. Subcontractor agrees to be bound by the procedure and final determinations as specified in any such disputes clause, and agrees that it will not take, or will suspend, any other action or actions, arbitration or arbitrations with respect to or in any way relating to any such claims and will pursue no independent litigation or arbitration with respect thereto or relating thereto, pending final determination under such disputes clause. Subcontractor shall not be entitled to receive any greater amount from Contractor than Contractor actually does receive from Owner on account of Subcontractor's work, less any mark-ups or costs incurred by Contractor and to which Contractor is otherwise entitled, and Subcontractor agrees that it will accept such amount, if any, received by Contractor from Owner as full satisfaction and discharge of all claims for or on account of acts or omissions of Owner or its representatives.

B.      Should a dispute arise which is not controlled or determined by the above paragraph of this Section or other provisions of this Subcontract, then said dispute shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless Contractor, in its sole discretion, decides to dispense with arbitration, in which case resort shall be to the courts.

If Contractor does not dispense with arbitration, Contractor may join or consolidate any third party or claim into an arbitration with Subcontractor for final resolution. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon and in accordance with applicable law in any court having jurisdiction thereof.

C.      In the event of any claim or dispute between Contractor and Subcontractor, it is specifically agreed by the parties hereto that no claim, dispute or controversy shall interfere with the progress and performance of work required to be performed under this Subcontract and Subcontractor shall proceed as directed by Contractor in all instances with its work under this Subcontract.

D.      Except as provided elsewhere in these Contract Provisions, neither Contractor nor Subcontractor are entitled to attorney fees and costs in any dispute or ensuing arbitration or litigation between them.

## SECTION 10. DELAYS:

A.      In the event that Subcontractor's performance of this Subcontract is delayed or interfered with by the acts of Owner, Contractor, or other subcontractors, Subcontractor may request an extension of the time for the performance of the same, as hereafter provided, but only upon the same terms and conditions and only to the extent actually allowed to Contractor by Owner, and Subcontractor shall not be entitled to any increase in the Subcontract price or to damages or additional compensation as a consequence of such delay or interference, or for acceleration relating to any such delay or interference, except to the extent that the Prime Contract entitles Contractor to compensation for such delays and then only to the extent of any amounts that Contractor may, on behalf of Subcontractor, recover from Owner for such delays.

B.      No allowance for an extension of time, for any cause whatsoever, shall be claimed by Subcontractor unless Subcontractor shall have made written request for such extension within three (3) working days after the cause of such extension occurred, or, if the Prime Contract provides for a shorter period, within sufficient time to permit Contractor to give the specified notice to Owner.

C.      Contractor and Subcontractor shall not be liable to one another for any delays arising out of acts of God, strikes, embargoes or other causes explicitly determined to be beyond their control; except in the event that Owner should assess actual or liquidated damages or penalties against Contractor, then Subcontractor shall be responsible for such portion of the assessment as may be directly attributable to it, regardless of the cause of delay.

D.      Notwithstanding any other provisions herein or in the Prime Contract, Contractor's recovery against Subcontractor for delays, interferences, impacts, etc., for which Subcontractor is responsible shall not be limited to any liquidated damages provisions or assessments.

## SECTION 11. INDEMNIFICATION:

A.      Subcontractor agrees to defend, indemnify and hold Contractor harmless from any and all claims, demands, losses, and liabilities to or by third parties arising from, resulting from or connected with services performed or to be performed under this subcontract by Subcontractor or Subcontractor's agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

B.      Subcontractor's duty to defend and indemnify Contractor shall not apply to liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of Contractor or Contractor's agent or employees.

C.      Subcontractor's duty to defend and indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the concurrent negligence of (a) Contractor or Contractor's agents or employees, and (b) Subcontractor or Subcontractor's agents or employees, shall apply only to the extent of negligence of Subcontractor's agents or employees.

D.      Subcontractor specifically and expressly waives any immunity that may be granted it under the Washington State Industrial Insurance Act, Title 51 RCW. Further, the indemnification obligation under this Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable to or for third party under workers' compensation acts, disability benefits acts, or other employee benefit acts.

E.      By initialing below, Contractor and Subcontractor hereby specifically agree to and acknowledge that above paragraph was mutually agreed upon.

ATC: _____          Subcontractor: _____

F.      Notwithstanding the provisions of this Section, if Contractor's indemnity obligation to Owner is broader in any respect than the provisions of this Section, then Subcontractor agrees to afford Owner and Contractor any broader relief in addition to the relief afforded in this Section to the fullest extent permitted by law.

## SECTION 12.  WARRANTIES, GUARANTEES AND INSPECTION:

A.      All work shall be performed by Subcontractor in a neat, skillful, and good workmanlike manner and the same shall be fit for its intended use both as to workmanship and materials.  Subcontractor guarantees that the materials furnished and the work performed will be new and strictly comply with the Prime Contract and this Subcontract.

B.      During the guarantee period established in the Prime Contract documents, and if no such period be therein stipulated, then for a period of one year from the date of final acceptance by Owner, Subcontractor agrees to make good, solely at its expense, all defects due to workmanship and/or materials furnished by Subcontractor irrespective of contract compliance when originally furnished, and all damage to other work resulting there from.  Subcontractor further agrees to execute, in writing, any guarantees, maintenance agreements, or other documents related to the work furnished by Subcontractor and required by the terms of the Prime Contract.  Subcontractor's responsibility for latent defects shall extend beyond the guarantee period to the extent applicable statutes permit.

C.      The materials and work of Subcontractor shall at all times be subject to inspection by Contractor and Owner, and their respective representatives.  Subcontractor shall at all times provide safe and necessary access and facilities for such inspection.  In the event that any portion of the work or any material is determined by Contractor or Owner to be improper or defective, Subcontractor shall, immediately upon being notified by Contractor, proceed to remove, dispose of and replace the same at its own cost and expense.  No inspection or failure to direct repair or replacement of work shall constitute or imply acceptance of any part of Subcontractor's work.

## SECTION 13.  TERMINATION, TAKEOVER, SUSPENSION:

A.      In the event Contractor's work under the Prime Contract is terminated prior to project completion, then an equitable settlement for work performed under this Subcontract prior to such termination will be made as

provided by the Prime Contract documents, if such provision is made; or if none such exist, and agreement is not reached, as provided in the Disputes Clause of this Subcontract. Subcontractor shall not be entitled to prospective profits on unperformed work.

B.      If the Prime Contract provides Owner with the right to request that Subcontractor be removed from the project, and in the event that Owner so requests, then Subcontractor will not perform any further work under this Subcontract and will be entitled only to its regular progress payment for work completed but no additional damages for the termination.

C.      Except as otherwise provided in the Subcontract, in the event that Subcontractor fails to comply, becomes disabled from complying, or fails to furnish where requested written assurance of its ability to comply, with the provisions herein as to character or time of performance, and the failure is not corrected within forty-eight (48) hours after written notice by Contractor to Subcontractor, Contractor, may without prejudice to any other right or remedy against Subcontractor or its surety, take over and complete the performance of this Subcontract, or any part of it, at the expense of Subcontractor, or without taking over the work, may furnish the necessary materials and/or employ the workmen necessary to remedy the situation at the expense of Subcontractor. If Contractor takes over work pursuant to this paragraph, it is specifically agreed that Contractor may take possession of the premises and of all materials, tools, and equipment of Subcontractor at the site for the purpose of completing the work of this Subcontract. Subcontractor shall be liable to Contractor for all costs, losses, damages and extra expense, including overhead, incurred by Contractor incident to such completion. It is agreed that Subcontractor shall be considered as disabled from so complying with this Subcontract whenever a petition in bankruptcy or for the appointment of a receiver is filed by or against him.

D.      In the event Owner, for any cause, suspends work under the Prime Contract, Contractor may order Subcontractor to suspend work under this Subcontract. Subcontractor shall not be entitled to any additional compensation or damage for such suspension, except and only to the extent Contractor receives additional compensation from Owner under the provisions of the Prime Contract for work covered by this Subcontract. Subcontractor shall not be entitled to profit on its costs attributable to any suspension of work.

E.      The Contractor may, at its sole and absolute discretion, terminate this Subcontract for its convenience. If the Contractor so elects, the Contractor shall be liable to the Subcontractor solely for the reasonable value of work performed by the Subcontractor prior to the Subcontract termination, including reasonable overhead and profit, less prior payments made. Subcontractor shall not be entitled to prospective profits on unperformed work.

F.      If the Contractor wrongfully exercises its rights under this section, the Contractor shall be liable to the Subcontractor solely for the reasonable value of work performed by the Subcontractor prior to the Contractor's wrongful action, including reasonable overhead and profit, less prior payments made. Subcontractor shall not be entitled to prospective profits on unperformed work.


### SECTION 14.  INSURANCE:

A.      Before any work is commenced under this subcontract by either the subcontractor or any assignee or any lower tier subcontractor, subcontractor shall obtain and keep in force during the term of this subcontract comprehensive general liability insurance with dollar limits and coverage equal to, or greater than, the minimum specified in the main contract for Contractor.

Contractor's Initials  _ _ _  ATC ___ Sub

B.     Subcontractor's comprehensive general and automobile liability insurance, as required by Paragraph 14.A, shall be written for not less than limits of liability as follows or as are set forth in attachments to this Subcontract, but in any event not less than required by any provision in the Prime Contract:

     a.  Comprehensive General Liability

| | | |
|---|---|---|
| 1. | $1,000,000.00 | Each Occurrence |
| 2. | $50,000.00 | Damage to rented Premises (Each Occurrence) |
| 3. | $5,000.00 | Medical Expenses (Any one person) |
| 4. | $1,000,000.00 | Personal & Adv Injury |
| 5. | $2,000,000.00 | General Aggregate |
| 6. | $2,000,000.00 | Products-Comp/OP Agg |

     b.  Comprehensive Automobile Liability

| | | |
|---|---|---|
| 1. | $1,000,000.00 | Combined Single Limit |

     c.  Workers Compensation and Employment Liability

| | | |
|---|---|---|
| 1. | $1,000,000.00 | EL Each Accident |
| 2. | $1,000,000.00 | EL Disease-Ea Employee |
| 3. | $1,000,000.00 | EL Disease-Policy Limit |

C.     Comprehensive general liability insurance may be arranged under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an excess or umbrella liability policy.  If watercraft are to be used in the performance of the work, evidence of coverage under the U.S. Longshoremen and Harbor Workers Act and under Maritime Law, Coverage II, shall be submitted.

D.     Subcontractor shall provide insurance and a Certificate of Insurance which provides that Subcontractor's insurance 1) names Contractor and Owner as additional insured without qualification, limitation or reservation; 2) is endorsed to be primary or non-contributory with any insurance maintained by the Contractor or owner; 3) contains a waiver of subrogation against Contractor and Owner; 4) said additional insured endorsements shall cover both ongoing and completed operations.

## SECTION 15.  LEGAL:

A.     This Subcontract shall be considered to have been made in and shall be interpreted under the laws of the State of Washington.
B.     The location for any arbitration or venue for any lawsuit arising out of the Subcontract or the work thereunder shall be Seattle, Washington and all proceedings shall be strictly in accordance with the laws of the State of Washington.

C.     Any notice required to be given by a party shall be directed to such party and mailed by certified mail or personally delivered.  Such notice shall be effective at the time received at the address indicated below of such party.

D.     This agreement represents the final understanding of the parties hereto and Contractor assumes no responsibility for any understanding or representations made by any of its officers, agents or others prior to the execution of this Subcontract, unless such understanding or representations by Contractor are expressly stated in this Subcontract.

E.     Failure on the part of either party to exercise its rights under the provisions of this Subcontract for any breach of the provisions hereof by the other shall not constitute a waiver of such rights for any subsequent breach of any provision hereof.

Contractor's Initials ___ ATC _✓✓_ Sub

Attachments:

Other Documents, if any, forming part of the Subcontract Documents are as follows:

1. Exhibit "A" Description of Work
2. Exhibit "B" Description of Unit Price
3. Exhibit "C" Construction Schedule
4. Exhibit "D" Daily Work Record
   - *Required to be filled out by the subcontractor each day on site.*
5. Exhibit "E" Subcontractor's Billing Check List
6. Exhibit "F" Subcontractor's Application for Payment
   - *Subcontractor to submit **original** payment application on attached ATC forms.*
7. Exhibit "G" Conditional Release and Waiver of Lien Rights
8. Exhibit "H" Unconditional Release and Waiver of Lien Rights
9. Exhibit "I"      Safety Requirements
10. Exhibit "J"     Subcontractor Insurance Requirements (Certificate mailed directly to us)
11. Exhibit "K"     Davis Bacon Wage Information
12. Exhibit "L"     Company Information Sheet
13. Certified Payroll Sheets
14. Standard Form 1413
15. W-9

**Contractor:**                                      **Subcontractor:**

Advanced Technology Construction Corp.               AMP Electric

                                                     *Nicholas Z Boscacci*
_____                      _____
**CONTRACTOR** (*Signature*)                         **SUBCONTRACTOR** (*Signature*)

                                                         9/30/2015
_____                      _____
DATE                                                 DATE

 Randy Russell, Vice President of Finance            Nicholas L Boscacci, CEO
*(Printed name and title)*                            *(Printed name and title)*

Address:                                             Address:

   3828 E. Portland Avenue                               1735 E Bayshore Rd,

   Tacoma, WA 98404                                      Redwood City, CA 94063

## DESCRIPTION OF WORK
## EXHIBIT "A"

**Summary of Work:**    Provide all materials, labor, supervision, and equipment to provide complete and fully operational electrical, communications, and electronic safety and security systems per specification divisions 26-Electrical, 27 Communications, and 28 Electronic Safety and Security. Work includes decommissioning, examination, and verification testing of the existing PV system prior to making safe and disassembly. AMP shall carefully remove and securely store the existing equipment in a container(s) provided by ATC. AMP shall reinstall the existing PV system and replace any damaged or lost components. After installation according to manufactures specifications, AMP shall confirm PV system is properly operating and providing the same output or more before the system was taken off-line. AMP shall employ a solar engineer to witness pre and post construction system operation. The Veterans Administration shall witness and approve the system testing.

A brief summary of the work scope includes but is not limited to:
- Mobilization and demobilization
- Remove and reinstall exterior light fixtures, outlets, camera, card readers, speakers and all raceways per drawing ES1-0 note 1.
- Demo all light fixtures, switches and associated wiring on the first and second floor per drawings
- Demo all receptacles and voice and data outlets and associated wiring on the first and second floor per drawings.
- Remove existing PNL LBD1 and relocate to new location.
- Relocate existing fire alarm cabinet.
- (N) Receptacles and associated wiring for all power connections.
- (N) 1 1/4 conduit with pull string to accessible ceiling space for CCTV system.
- (N) 1 1/4 conduit with pull string to accessible ceiling space for bingo display.
- Power connection for area alarm control.
- (N) Raceway and power connection for (N) electric locks
- All necessary scanning and coring
- All necessary fire stopping for any work contained is this scope.
- Off-hour work.
- Daily cleanup and proper disposal of debris and waste.

Exclusions:
- Permit cost
- Patching
- Painting unless specified in specification divisions noted above.
- Sanitation Facilities

**General:**
- Subcontractor shall comply with the requirements of all applicable codes, ordinances and regulations of governing bodies having jurisdiction of the work.
- Subcontractor's representative shall attend weekly jobsite meetings.
- Subcontractor shall commence work promptly and will perform work in such a manner as to allow for the overall completion of the work per the contract schedule.
- The work shall be performed in a safe and workmanlike manner in accordance with the best industry standards. Perimeter railing and/or cables and barricades will be provided by subcontractor in compliance with all OSHA/WISHA standards and acceptability for Subcontractors work. If it becomes necessary to temporarily remove any railing or barriers in the performance of the work the subcontractor shall maintain the required safe work area and precautions for the subcontractor's employees and other trades. The subcontractor will reinstall the railings and barricades with full compliance of OSHA/WISHA requirements.
- Subcontractor shall perform its work based upon requirements listed in the plans and Specifications.
- Subcontractor shall coordinate its work with the Contractor and other Subcontractors for the project.
- Subcontractor is responsible for **daily** cleanup of all debris.
- All building penetrations made by Subcontractor shall be repaired to condition prior to start of work.
- Subcontractor shall provide before completion of work; all project closeout including test and balance, commissioning, as-built drawings, O & M manuals, warranties, etc. as applicable.

C o n t r a c t o r ' s   I n i t i a l s  _ _ _  A T C  _Sub

**DESCRIPTION OF UNIT PRICE**
**EXHIBIT "B"**

**Not Applicable**

INTENTIONALLY LEFT BLANK

C o n t r a c t o r ' s   I n i t i a l s  _ _ _  A T C  _Sub

**SAFETY REQUIREMENTS**
**EXHIBIT "C"**

The Subcontractor shall submit a Site Specific Safety Plan and a Site Specific Fall Protection Plan to be used duringr the duration of this work. A safety officer and competent person shall be appointed and assigned to oversee the work. Weekly safety meeting and Daily reports are required.

# *SUBCONTRACTOR IS TO SUBMIT A SITE SPECIFIC SAFETY PLAN*

**CONSTRUCTION SCHEDULE**
**EXHIBIT "D"**

*Please schedule all work through Project Manager Wayne Gilthvedt at 253.249.9878*

EXHIBIT "E"

## ATC, SUBCONTRACTOR DAILY REPORT FORM

| COMPANY NAME | SUPERVISORS SIGNATURE | DATE |
|---|---|---|
| | | |

Note: The purpose of this Daily Report Form is to document the information requested herein. Extraneous information should not be included on this form. Specifically, this form does not constitute notice of any claims for changes, extra work, changed conditions, delays or other asserted grounds for equitable adjustment. Any information of that nature, to be considered, must be submitted separately pursuant to and in conformance with contract obligations.

| WORK PERFORMED TODAY | | NUMBER OF | TOTAL |
|---|---|---|---|
| DESCRIPTION | TRADE | WORKERS | HOURS |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL-- | |

| EQUIPMENT ON SITE TODAY | | |
|---|---|---|
| OWNER | MAKE AND MODEL OF EQUIPMENT | HOURS USED |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| MATERIAL DELIVERED ON SITE TODAY, INCLUDE DESCRIPTION AND AMOUNT |
|---|
| |
| |
| |

| NOTE ANY SAFETY MEETING OR INCIDENTS THAT OCCURRED TODAY |
|---|
| |
| |
| |

| REMARKS |
|---|
| |
| |

Contractor's Initials ___ ATC Sub